IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN GANS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 06-62J |
| | ) | |
| v. | ) | Judge Gibson |
| | ) | Magistrate Judge Caiazza |
| GERALD L. ROZUM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendants' Motion to Dismiss or for Summary Judgment (Doc. 40) be granted.

### II. REPORT

This is a prisoner civil rights suit filed by Kevin Gans ("Gans" or "the Plaintiff") in which he asserts that he has been held in administrative custody for the past eleven years of his incarceration. He alleges that his continued placement in the Restricted Housing Unit ("RHU") violates his constitutional rights in several ways: (1) he has been denied his First Amendment right of access to the courts; (2) the conditions of his confinement violate the Eighth Amendment's prohibition against cruel and unusual punishment; (3) his placement in the RHU, and the periodic decisions to keep him there, violate his rights to Due Process and Equal Protection. Gans also asserts state law claims mirroring these federal constitutional claims,

and that the Defendants have engaged in "gross negligence" and
"fraud." (Doc. 37).  The Defendants have filed a Motion to
Dismiss and/or for Summary Judgment (Doc. 40), and the Plaintiff
has responded. (Doc. 54).  The motion is ripe for disposition.

## A.    The Legal Standard

The standard a court applies with respect to a motion to
dismiss filed pursuant to Federal Rule of Civil Procedure
12(b)(6) is that dismissal is appropriate if no relief could be
granted under any set of facts alleged in the Complaint. Hishon
v. Spalding, 467 U.S. 69, 73 (1984); Bartholomew v. Fischl, 782
F.2d 1148, 1152 (3d Cir.1986). Additionally, the Supreme Court
recently clarified the Rule 12(b)(6) standard in Bell Atlantic
Corporation v. Twombly. ___ U.S. ___ (2007), 127 S. Ct. 1955
(2007). Specifically, the Court in Twombly "retired" the prior
standard set out in Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
In its place the Supreme Court instructed that "[f]actual
allegations must be enough to raise a right to relief above the
speculative level." Twombly 127 S. Ct. at 1965.

Gans' burden in response to a well-pleaded motion for
summary judgment is to present "`. . . specific facts showing
that there is a genuine issue for trial.' Fed. Rule Civ. Proc.
56(e)(emphasis added)" or the factual record will be taken as
presented by the moving party and judgment will be entered as a
matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587 (1986).

**B.    The Exhaustion of Administrative Remedies**

1.    The Applicable Law.

The Defendants assert that Gans failed to exhaust his

available administrative remedies with respect to all of the

claims made in his Complaint. The applicable - and mandatory -

exhaustion requirement which Congress enacted in the Prison

Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat.

1321 (1996) reads as follows:

> (a)   Applicability of administrative remedies
>
> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or
> any other Federal law, by a prisoner confined in
> any jail, prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

42 U.S.C.A. § 1997e(a) (emphasis added). Before filing a civil

action, a plaintiff-inmate must exhaust his administrative

remedies; this requirement remains mandatory even if the ultimate

relief sought by the prisoner is not available through the

administrative process. See Booth v. Churner, 206 F.3d 289, 300

(3d Cir.2000), cert. granted, 531 U.S. 956 (2000), aff'd, 532

U.S. 731, (2001). There is no "futility" exception to the

administrative exhaustion requirement. Ahmed v. Dragovich, 297

F.3d 201, 206 (3d Cir. 2002)(citing Nyhuis v. Reno, 204 F.3d 65,

78 (3d Cir. 2000)). Further, the Court of Appeals for the Third

Circuit has reaffirmed the exhaustion rule. It is insufficient for a prisoner to establish that "there is no further process available to the inmate within the grievance system (which would occur if, say, an inmate fails to file an administrative appeal)...." Spruill v. Gillis, 372 F.3d 218, 227-28 (3d Cir.2004). Rather, the Spruill court made clear that §1997e(a) requires an inmate to "avail[ ] himself of every process at every turn (which would require all appeals to be timely pursued, etc.)." Id. In short, "it is beyond the power of this court - or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis, 204 F.3d at 73 (quotation omitted).

    2. The Analysis

    As noted above, the Defendants assert that Gans failed to exhaust administrative remedies with respect to his claims. Gans, however, argues that he filed two grievances, numbers 156632 and 156798, and that his attempts to exhaust these grievances were frustrated by the Defendants.

    The Defendants have supplied a verification from Tracy L. Pollock, the Commonwealth of Pennsylvania Department of Corrections ("DOC") Grievance Review Officer, who states that Grievance No. 156632 was rejected on Final Review because Gans failed to provide the proper supporting documentation, and that Gans did not file a grievance numbered 156798 (Doc. 40, Ex.1).

Gans, on the other hand, has presented evidence concerning his attempts to grieve the issues raised in this case, including a response to a grievance which is marked as No. 156798. Gans asserts that the Initial Response to Grievance No. 156632 was erroneously marked with another grievance number, i.e., No. 156798. He asserts that he never received a response with No. 156632 marked on it, and hence, that he was unable to provide a copy of the Initial Response when he attempted to appeal the denial of Grievance No. 156632. Gans argues that his appeal of Grievance No. 156798 was denied on the basis that no such grievance had been filed (Doc. 55, at 3 and 4), even though he possessed a response with that number assigned to it.

At this point and on this record, it is not possible for the Court to resolve the disputed facts concerning Gans' attempts to grieve. It may be, as he argues, that his attempts to grieve the issues raised in this case were unsuccessful due to errors made by the Defendants in the administrative appeal process. Therefore, summary judgment is not appropriate with respect to the exhaustion of administrative remedies.


C.    **The Plaintiff's Claims**

   1. Due Process

   The gravamen of Gans' lawsuit is that the decision to place him in the RHU upon his arrival at the State Correctional

Institution at Somerset, and the DOC's periodic decisions to keep him in the RHU  and not to return him to the general population, have all been made on the basis of "inaccurate" information contained in Gans' prison records.  Gans concedes that his status is reviewed every ninety days by the Program Review Committee ("PRC") (Doc. 37, ¶12), but argues that incorrect information, which he says is present in his prison file, has never been remedied.[1]  This claim arises under the Due Process Clause of the Fourteenth Amendment.  In order to state a claim, Gans must first set out facts which demonstrate that he had a protected liberty interest impaired by the Defendants' actions.  <u>Hewitt v. Helms</u>, 459 U.S. 460 (1983); <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972).  Once the Court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it.  <u>Morrissey</u>, 408 U.S. at 481.

Gans' claim is determined by reference to the Third Circuit Court's decision in <u>Shoats v. Horn</u>, 213 F.3d 140 (3d Cir. 2000).

---

1.  Gans complains that he has been improperly accused of being a violent sexual predator. (Doc. 37, ¶14(a)).  Attached to his First Amended Complaint is a January 12, 2006 Program Review Committee 90 Day Review which reflects the rationale for his continued placement in the RHU:

> PRC recommends continued placement on AC status for safety and security reasons, given the serious misconduct history of this inmate.  He has a history of assaultive and sexually predatory behavior, which would put staff and other inmates at risk, in general population.

(Doc. 26, at 27).

In <u>Shoats</u>, a prisoner had been placed in administrative custody
and maintained there in virtual isolation for eight years.  The
Court noted that such a long-term placement clearly gave rise to
procedural due process protections under the analysis mandated by
<u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  Nonetheless, relying upon
<u>Hewitt v. Helms</u>, 459 U.S. 460 (1983), the Third Circuit Court
found that informal, periodic review of the prisoner's
administrative custody status satisfies the requirements of due
process. <u>Shoats</u>, 213 F.3d at 147.

Here, the same analysis is applicable. While the permanency
of Gans' placement in the RHU appears to satisfy the requirement
that a liberty interest be implicated, the periodic review
provides the process due. The Plaintiff's repeated, general
allegations that the Defendants relied upon "inaccurate" and
"misleading" information in denying him release to the general
population is only argument; *i.e.*, he disagrees with the
Defendants' decision to place him in the RHU.  The Supreme Court
explained the scope of discretion allowed to prison
administrators in circumstances similar to Gans';

> In assessing the seriousness of a threat to
> institutional security, prison administrators
> necessarily draw on more than the specific facts
> surrounding a particular incident; instead, they
> must consider the character of the inmates
> confined in the institution, recent and
> longstanding relations between prisoners and
> guards, prisoners inter se, and the like. In the
> volatile atmosphere of a prison, an inmate easily
> may constitute an unacceptable threat to the

safety of other prisoners and guards even if he
himself has committed no misconduct; rumor,
reputation, and even more imponderable factors may
suffice to spark potentially disastrous incidents.
The judgment of prison officials in this context,
like that of those making parole decisions, turns
largely on purely subjective evaluations and on
predictions of future behavior.

Hewitt, 459 U.S. at 474.  Thus, as the Third Circuit Court noted

in Shoats, a prisoner may be placed in administrative confinement

even where no misconduct has occurred, and all that is required

is that the prison provide an opportunity for the prisoner to

contest the "purely subjective evaluation" of his dangerousness.

Again, the holding in Shoats is instructive: "[b]ecause [the

inmate] has failed to provide any support for his assertions that

his PRC reviews were constitutionally inadequate, we hold that

the periodic reviews conducted by the PRC . . . comport with the

minimum constitutional standards for due process." Shoats, 213

F.3d at 147.

　　2.　Access to Courts

Gans does have a constitutional right of access to the

courts, but he must either attack his conviction, or claim that

he has suffered a civil rights violation. That said, Gans is

under an affirmative duty to identify the underlying basis of the

action which he alleges was impeded. Lewis v. Casey, 518 U.S.

343, 354 (1996); Christopher v. Harbury, 536 U.S. 403, 415-17

(2002).  Here, Gans makes general allegations, claiming that he

has less access to the law library than inmates in general

-8-

population, and that this impeded his attempts to appeal his conviction.  Gans does not specifically identify any motion or pending appeal which was affected by his placement in the RHU.

In Christopher, the Supreme Court explicitly held that a plaintiff must identify a non-frivolous claim which was actually impacted by the complained-of activity in order to state a claim. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." Chrostopher, 536 U.S. at 416.  Gans' claim necessarily fails because he has not identified a non-frivolous claim which he was prevented from presenting due to his placement in the RHU.


3.    The Eighth Amendment

Gans also asserts that the conditions of confinement in the RHU violates the Eighth Amendment.  To state an Eighth Amendment claim, Gans must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Gans alleges that he has been subjected to "unpleasant exercise condition[s] at times." He cites to a lack of adequate clothing in cold weather; an inadequate sick call procedure which results in delays; "dusty" ventilation; a "single exercise cage" which prevents him

from contact with other prisoners; and "lockdown" status twenty three hours per day. (Doc. 37, ¶16).

In order to state a claim, the conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (internal citation and quotation omitted).  Only "extreme deprivations" make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions -considered alone constitutionally insufficient-  may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991).

In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Wilson, 501 U.S. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir.1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)); see also, Castro v. Cheney, No. 97-

4983, 1998 WL 767467, at *6 (E.D.Pa. Nov.3, 1998). The court may also consider the extent of any injury actually incurred to determine whether the deprivation is sufficiently serious to implicate the Eighth Amendment's prohibition. <u>Cowans v. Wyrick</u>, 862 F.2d 697, 700 (8th Cir. 1988).

Here, Gans has alleged, at most, mild discomfort from the conditions of his confinement. He asserts, in effect, that he was cold during the winter while in the exercise yard. He does not deny that he was provided exercise, nor does he allege that he was forced to remain outside in dangerously cold conditions.  To quote Gans, he merely alleges that he was "uncomfortable"; this statement is insufficient to state an Eighth Amendment claim.

Gans further fails to allege that he was denied any necessary medical treatment, or that any named defendant was deliberately indifferent to a serious medical condition, due to the allegedly "slow" medical call for RHU prisoners.  Again, he has not identified a sufficiently serious condition of confinement to implicate the Eighth Amendment.

The same can be said of Gans' claim of "dusty" ventilation. There is no right to pristine, or even comfortable, prison conditions. <u>Wilson</u>, 501 U.S. at 298. Gans' allegation that the ventilation is "dusty," without more, is insufficient to assert a claim that an identifiable human need was denied to the Plaintiff.

Finally, housing certain problem prisoners in isolation from other inmates and providing only limited exercise is not a condition of confinement which violates the Eighth Amendment. "[S]egregated confinement in solitary or maximum security is not per se banned by the Eighth Amendment." Clifton v. Robinson, 500 F.Supp. 30, 34 (E. D.Pa.1980)(quoting Burns v. Swenson, 430 F.2d 771, 777 (8th Cir 1979)). Further, "'isolation from companionship, restriction on intellectual stimulation[,] and prolonged inactivity, inescapable accompaniments of segregated confinement, will not render [solitary] confinement unconstitutional absent other illegitimate deprivations.'" In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 472 (4th Cir. 1999)(quoting Sweet v. South Carolina Dept. of Corrections, 529 F.2d 854, 861 (4th Cir.1975))(en banc).

Here, Gans has alleged only that he has, in fact, been placed in segregated confinement. He has failed to identify any "illegitimate" deprivation of a constitutional right which would state an Eighth Amendment claim.

In sum, Gans has asserted conditions he finds uncomfortable and upsetting -nothing more. Viewing the record in a light most favorable to Gans, within the context of prison life, Gans has not established that he was denied "the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. Considering his

complaints cumulatively, Gans has failed to satisfy the objective

standard of the <u>Farmer</u> test and the Defendants are entitled to

summary judgment with respect to his Eighth Amendment claim.

    4. <u>The Retaliation Claim</u>

    Gans also asserts that he has been retaliated against for

filing this lawsuit. Specifically, Gans alleges that his single

exercise cage status began "three months after filing this . . .

civil action . . .." (Doc. 37, ¶16(c)). His claim of retaliation

fails because it lacks evidence. "Retaliation for the exercise of

constitutionally protected rights is itself a violation of rights

secured by the Constitution actionable under section 1983." <u>See</u>

<u>White v. Napoleon</u>, 897 F.2d 103, 111-12 (3d Cir.1990). However,

to state a *prima facie* case of retaliation, a prisoner must

demonstrate:

> 1) the conduct in which he was engaged was
> constitutionally protected; 2) he suffered adverse
> action at the hands of prison officials; and
> 3) **his constitutionally protected conduct was a**
> **substantial or motivating factor in the decisions**
> **to discipline him.**

<u>Carter v. McGrady</u>, 292 F.3d 152, 157-58 (3d Cir.2002) (internal

citation and quotation omitted)(emphasis added). Here, there is

no competent evidence which would allow a fact finder to conclude

that permitting Gans' to have outdoor exercise only by himself

was an act of retaliation. Gans himself alleges that he has been

placed in some type of administrative custody for eleven years

due to the DOC's belief that he is a danger to staff and other

inmates.   Yet, Gans alleges that he was restricted to single
exercise periods only because he has filed this lawsuit;
interestingly, the only facts supporting this claim is his
assertion that the solitary exercise periods began three months
after this lawsuit was filed. This is too thin a reed for Gans to
hang a retaliation claim upon, and it would not support a finding
that retaliation occurred in this case.

   5. The Equal Protection Claim.

The Equal Protection Clause of the Fourteenth Amendment "is
essentially a direction that all persons similarly situated
should be treated alike." Cleburne v. Cleburne Living Center,
Inc., 473 U.S. 432, 439 (1985). In order to state an equal
protection claim, a plaintiff must show that: (1) the complaining
person, compared with others similarly situated, was selectively
treated; (2) the selective treatment was motivated by an
intention to discriminate on the basis of impermissible
considerations, such as race or religion; and (3) the defendant
was motivated by an intent to punish or inhibit the exercise of
the constitutional rights of a complaining party, or by a
malicious or bad faith intent to injure the complaining party.
Homan v. City of Reading, 963 F. Supp. 485, 490 (E.D. Pa. 1997)
(citing Zahra v. Town of Southold, 48 F.3d 974 (2d Cir. 1995));
see also Government of the Virgin Islands v. Harrigan, 791 F.2d
34 (3d Cir. 1986). With respect to this action, there are no

allegations claiming that race played a part in the Moving
Defendants' treatment of the Plaintiff. Furthermore, Gans has not
presented any evidence showing that race played a part in the
Defendants' decisions to place him in the RHU, or that any other
similarly situated prisoner was treated differently. Summary
judgment, therefore, is appropriate with respect to the Moving
Defendants. <u>Hedrich v. Board of Regents of University of
Wisconsin System</u>, 274 F.3d 1174, 1183 (7th Cir. 2001).

      6.   <u>The State Law Claims</u>

The Defendants move for summary judgment with respect to the
state law negligence and fraud claims raised against them on the
basis that Pennsylvania provides immunity from suit for officials
and employees acting within the scope of their employment. 42 Pa.
Cons. Stat. Ann. §§ 8501, 8522.  "In order to overcome the
defense of sovereign immunity under Section 8522 of the Judicial
Code, 42 Pa. Cons. Stat. § 8522, [plaintiffs] must meet two
distinct requirements: (1) they must show that they possess a
common law or statutory cause of action against a Commonwealth
party; and (2) they must demonstrate that the cause of action
falls within one of the exceptions to sovereign immunity
contained in Section 8522(b)." <u>Pennsylvania Turnpike Commission
v. Nationwide Trucking Services, Inc.</u>, 319 F. Supp.2d 569, 579
(W.D.Pa. 2004)(internal citation omitted). These exceptions are
limited in scope, and are to be strictly construed. <u>White by</u>

<u>Pearsall v. School Dist. of Phila.</u>, 553 Pa. 214, 718 A.2d 778, 779 (1998). The court has reviewed the exceptions, and can find none that are arguably applicable to the claims made in this case. Hence, the Defendants are entitled to summary judgment on these claims as well.

## III. <u>CONCLUSION</u>

For the reasons set out in this Report and Recommendation, it is respectfully recommended that the Motion to Dismiss or for Summary Judgment filed by Defendants (Doc. 40) be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by August 6, 2007.

July 20, 2007

Francis X. Caiazza
United States Magistrate Judge

cc:
KEVIN GANS
AF-5073
SCI Somerset
1600 Walters Mill Road
Somerset, PA 15510